# H. O. Hurley Co. et al. v. Martin et al., Commissioners of Revenue.

(Decided Dec. 18, 1936.)

SHACKELFORD MILLER, Jr., and RICHARD B. CRAWFORD for appellants.

B. M. VINCENT, Attorney Genreal, and M. B. HOLIFIELD, Assistant Attorney General, for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This appeal is prosecuted from a judgment of the Franklin circuit court, rendered in an action brought under the Declaratory Judgment Act by the appellants, H. O. Hurley Company and J. R. Thronton & Co., for a construction of the provisions of what is called the Kentucky Alcoholic Beverage Tax Law, enacted by the 1936 Special Revenue Session of the General Assembly, Chapter 1, and a declaration of the rights of the appellants thereunder, or, in other words, whether or not they, as manufacturers of certain preparations, proprietary medicines, flavoring extracts, etc., which contain ethyl alcohol, were required under its provisions to pay the tax of $1.04 per wine gallon thereby levied on the sale or distribution of alcoholic spirits.

This suit was filed by reason of a controversy having arisen between the appellants and the appellee com-

missioners of revenue for the commonwealth as to whether or not the appellants were, under the provisions of the act when properly construed, liable for the tax of $1.04 per gallon upon the ethyl alcohol purchased and used by them in the manufacture of these products or preparations which, while requiring ethyl alcohol in their making, were yet (they contend) not alcoholic beverages or fit for human consumption and were, as such, expressly excepted by the definition of "alcoholic beverage" set forth in section 1, subsection 3, of chapter 1 of the act.

The appellee commissioners of revenue, on the other hand, contend that the ethyl alcohol purchased and used by the appellant companies in the manufacture of their preparations is subject to the tax of $1.04 per gallon, provided by the act upon the sale or distribution of each gallon of spirits, irrespective of the use they make of the purchased ethyl alcohol, in that the specific wording of the act together with the various definitions contained therein of "alcoholic beverages" imposed a tax upon the sale of ethyl alcohol in any form, as being itself an alcoholic beverage and taxable as such whether used by the manufacturer for beverage or industrial purposes; that the wording and provisions of the act clearly evidence the intention of the Legislature to tax alcoholic beverages and to include therein ethyl alcohol as being itself a beverage and therefore taxable, even though not purchased nor used for beverage purposes.

The test is whether ethyl alcohol is an alcoholic beverage and not the use to which it is put.

The appellees' contention in this was, upon submission of the cause, upheld by the court, by its adjudging that:

"Ethyl alcohol purchased by the plaintiffs in Kentucky for the sole use by them of manufacturing.

"[a] Medicinal preparations manufactured in accordance with formulas prescribed by the United States Pharmacopoeia, national formulatory or the American Institute of Homeopathy that are unfit for use for beverage purposes;

"[b] Patented, patent and proprietary medicines that are unfit for use for beverage purposes;

"[c] Toilet, medicinal and antiseptic preparations and solutions that are unfit for use for beverage purposes; and,

"[d] Flavoring extracts and syrups that are unfit for use for beverage purposes, is taxable under the provisions of an act relating to revenue and taxation on the sale and distribution of alcoholic beverages, enacted by the 1936 Special Session of the General Assembly of the Commonwealth of Kentucky * * * and that said alcohol so purchased and used by these plaintiffs is subject to a tax of $1.04 on each wine gallon of spirits and a like or proportional rate per gallon on spirits sold or distributed in any other container of more or less than one gallon, although plaintiffs' use of said alcohol is not for beverage purposes, and the preparations manufactured by them, and in which said alcohol is a part thereof, are unfit for use for beverage purposes; and that said alcohol so purchased and so used by the plaintiffs is an 'alcoholic beverage' within the meaning and provisions of said act of 1936 Special Session of the General Assembly of Kentucky, and subject to all the provisions thereof."

Appellants contend that the court was led to err in so holding by reason of its conclusion reached that it was required to follow the strict wording of the law, even when it knew, as a practical matter, that ethyl alcohol was not an alcoholic beverage, nor could same be reasonably included or embraced within such classification, or subjected as such to the tax imposed thereon, under the terms of an act, which, though enacted as a revenue measure, was evidently intended to impose the named tax only upon alcoholic beverages, for which reason the lower court's construction of the act is complained of as producing a result (in holding ethyl alcohol, when only industrially used, is yet subject to the tax); absolutely contrary to the intent and purpose of the whole act.

The title of this act reads:

"An Act relating to revenue and taxation on the sale and distribution of alcoholic beverages, and declaring an emergency."

Section 1 of the act we find is confined to definitions of terms used in the act. Section 2 levies the tax of $1.50 on each barrel of 31 gallons of beer. Section 3 levies a tax of 25 cents on each gallon of wine. Section 4 of the act levies upon the sale or distribution by sale or gift a tax of $1.04 on each wine gallon of spirits. The other remaining provisions of the act provide for its administration; as to who shall pay the tax, the issuance of stamps, making of reports and other matters pertaining to the act's enforcement and administration.

The act imposes a tax on only three different articles, namely beer, wine, and spirits.

Looking to the intent evidenced by such provisions, the appellants consider that all of these three are commonly and generally known as "alcoholic beverages" and that the taxes imposed thereon by the act are therefore consonant and in keeping with its title, namely "An Act relating to revenue and taxation on the sale and distribution of alcoholic beverages." However, they further submit that if ethyl alcohol, purchased and used for industrial or nonbeverage purposes, is to be held subject to the tax, it can only be made so taxable by including it within the act's special definition given of the word "spirits."

Assenting and responding to this argument, the appellees state that alcohol is by the act's express definition of "spirits" included therein, and contend that the tax applies to ethyl alcohol, even when purchased by the appellants for nonbeverage purposes, by reason of the definition of the words "alcoholic beverage" and "spirits," contained in chapter 1, section 1, subsections 3 and 11 of the act, which are as follows:

"[Three] 'Alcoholic beverage' means and includes alcoholic spirits, liquor, rum, wine, beer, and every liquid or solid, patented or not, containing one per cent or more of alcohol by volume and capable of being consumed by a human being and every spurious or imitation liquor sold as, or under any name commonly used for, alcoholic beverages, whether containing any alcohol or not. Provided, that there is excepted from this definition of alcoholic beverages the following: [a] medicinal preparations manufactured in accordance with formu-

las prescribed by the United States Pharmacopoeia, national formulary or the American Institute of Homeopathy that are unfit for use for beverage purposes; * * * [c] toilet, medicinal and antiseptic preparations and solutions that are unfit for use for beverage purposes; and [d] flavoring extracts and syrups that are unfit for use for beverage purposes.''

''[Eleven] 'Spirits' means and includes whiskeys, brandies, distilled spirits, cordials, liquors, *alcohol, and any other alcoholic beverage,* whether or not included in the aforesaid categories, except beer, and wine which contains less than twenty-four [24] per cent alcohol by volume.'' (Italics ours.)

Also, by subsection 2 of section 1 ''alcohol'' is defined as follows:

'' 'Alcohol' means and includes ethyl alcohol hydrated oxide of ethyl or spirit of wine, from whatever source or by whatever process produced.''

Appellants contend that applying the well-settled and generally accepted canons of statutory construction for interpreting the intent and purpose of the Legislature in enacting this revenue measure, it becomes clearly apparent that it meant to provide by the act in question revenue only, as indicated by its title, by taxing ''alcoholic beverages'' and that ethyl alcohol, not being in its undiluted form a beverage, or where used industrially in making the preparations as by the act expressly excepted from the class of ''alcohloic beverages,'' is not subject to the tax imposed by this act, the title of which states that it is ''An Act relating to revenue and taxation on the sale and distribution of alcoholic beverages.''

While fully appreciating the scholarly and skillful presentation and argument of this question made by appellants' able counsel, in so adroitly and plausibly urging that the tax imposed by the act under consideration upon alcoholic beverages was not intended to be applied to nor imposed on ethyl alcohol, where not employed as or in making a beverage, but rather for making such nonbeverage articles as are manufactured by appellants and excepted from such classification of alcoholic bev-

erages, as being neither intended nor fit for human consumption, we are yet unable to concur with such contention made or in their conclusion so reached, that such is the proper construction of the act required for interpreting it according to the evident intention of the Legislature, as manifested by its title, terms, and definitions of the "spirits" or "alcoholic beverages" proposed to be taxed, which was to exempt from the tax such use as here shown made by the appellants of the ethyl alcohol purchased by them.

Rather, we regard the explicit and positive language of the act, embracing its title, definitions, and provisions (when all are considered together as a whole) regardless of the circumstances under which the act was enacted, as amply sufficient in itself to clearly evidence and show that the Legislature intended to thereby impose a tax on all "spirits," including ethyl alcohol (which the act itself defined as included therein) and to thereby alike in each instance subject it, as an alcohol or alcoholic beverage, to the tax of $1.04 per wine gallon, which the act imposes on the sale or distribution of "spirits" or "alcoholic beverages," regardless of the use for which purchased, whether as a beverage or for industrial purposes, in that the legislative intent appears to be alike in either instance to tax the sale of ethyl alcohol, as being itself, as by the act defined, an "alcoholic beverage" and therefore subject to the tax the act imposes on "alcoholic beverages."

It appearing that by the terms of this act it was the evident intent of the Legislature to so tax ethyl alcohol, the question as to what later use may be made of it by the purchaser, whether for beverage or industrial purposes, becomes here immaterial and not pertinent to the question here presented of whether or not ethyl alcohol is by the terms of this act subject to the tax it imposes on "spirits" or "alcoholic beverages."

A reading of chapter 1 of the act evinces at once that it was the Legislature's intention to make it adequately responsive as a revenue measure to the Governor's call for legislation providing more revenue. While the title of the act provides that it is one "relating to revenue and taxation on the sale and distribution of alcoholic beverages," it yet at the same time defined its meaning in its use of the words "alcoholic beverages"

to be that for the purpose of the act "alcoholic beverages" meant and included "alcoholic spirits, liquor, rum, wine, beer, and every liquid or solid, patented or not, containing one per cent or more of alcohol by volume and capable of being consumed by a human being. * * *"

It is also to be noted that it did not, in this definition given of "alcoholic beverages," exclude or except therefrom ethyl alcohol or purport to except same when used for the industrial purposes named in making the products or preparations "a, b, c, and d" excepted from its definition of what constituted "alcoholic beverages."

It is mentioned in the brief of able counsel for appellees that these exceptions, "a, b, c, and d," of preparations made by appellants and not included in the definition of "alcoholic beverages," appearing in subsection 3 of section 1 are "verbatim and literatum" the same as the sections "b, c, d, and e," named in chapter 146, article 4, sec. 27 of the 1934 Acts of the General Assembly, and that had the Legislature desired to exempt ethyl alcohol, when used for industrial purposes, from the operation of its levy, it could have easily further have borrowed or quoted therefrom subsection j, section 27, chapter 146, Acts of 1934, where by that act ethyl alcohol is excepted when used for industrial purposes.

The express language of chapter 1 of the act, and its definitions as therein given, is that "alcohol" embraces and means ethyl alcohol hydrated oxide of ethyl or spirit of wine. By subsection 11 thereof, "spirits" is defined as including whiskys, brandies, distilled sprits, cordials, liquors, alcohol, and any other alcoholic beverage. "Alcoholic beverage," by subsection 3, section 1, means and includes in its definition "alcoholic spirits."

Next following such provisions, naming and defining the spirits to be taxed, is section 4 of chapter 1, which provides that:

"There is hereby levied upon the sale or distribution by sale or gift a tax of one dollar and four cents [$1.04] on each wine gallon of spirits."

As stated in subsection 11, supra, the word "spirits"

means and includes "alcohol, and any other alcoholic beverage."

The levy thus made by section 4 of chapter 1 is broad enough, in view of these definitions of the articles intended to be brought within its purview, to cover every form of ethyl alcohol, when sold or distributed, regardless of what may be the buyer's purpose as to its use, whether as a beverage or as a separate ingredient or for mixing with some other substance in making a nonbeverage product.

Such being the clear and specific provisions of the act, evidenced by the express wording and definitions given therein, no need is found for invoking the aid of the canons of statutory construction to explain this language of the act, that is in itself clear and specific, for, as said in the case of Hewlett v. Springfield, 210 Ky. 199, 275 S. W. 385, 386, "the legislative intent may not be gathered from what the General Assembly failed to say, but from what it actually did say."

Of course, it may be conceded, as stated by appellants, that the primary and fundamental rule governing courts in the construction of statutes is that they be construed according to the intent and purpose of the Legislature, which intent is to be gathered from the consideration of the entire act, and when such intent is clearly manifest, it should be carried out, even though it becomes necessary to give unusual meaning to particular words or by rejecting words or by interpolating words.

On the other hand, such resort to rules of construction may be waived where we find the legislative intent clearly evidenced by the plain and precise words and provisions used by it in enacting the statute, and we are bound by the plain and fair meaning of the language used by it.

Here it is our conclusion that the provisions or wording of the act in themselves clearly express the intention of the Legislature to tax the sale and distribution of ethyl alcohol, as provided in section 4, supra, regardless of its intended character of use, whether for beverage or industrial use, and that ethyl alcohol is by the act itself made, treated, and taxed as an alcoholic beverage, adapted and fit for human consumption, as

provided by the foregoing sections and definitions therein given.

Such being our conclusion, it follows that the trial court's judgment being in accord with our views herein expressed, the same is affirmed.